UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                          CASE NO.  8:11-cr-231-T-23TBM
                                                      8:13-cv-29-T-23TBM
BRIAN GRAFTON

_____/


# **O R D E R**

Grafton's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the

validity of his conviction for aiding or assisting in the preparation of false documents

under the Internal Revenue laws, for which he is imprisoned for thirty-six months.

Grafton pleaded guilty and was sentenced under the terms of the plea agreement.

Grafton alleges that he was denied the effective assistance of counsel and contests the

amount of restitution that he must pay.  Although admitting that the motion to

vacate is timely, Response at 6 (Doc. 7), the United States correctly argues that the

motion to vacate lacks merit.

# **FACTS**[1]

> From approximately 2005 to mid-2008, Brian Mark Grafton
> was the owner and operator of Payroll Pro, Inc. ("PPI") which
> was located in Valrico, Florida. As such, Grafton was in the
> business of providing various payroll services for various
> business clients including calculating payroll and payroll taxes,

---

[1] This summary of the facts derives from the plea agreement.  (Doc. 20).

processing payroll, preparing federal payroll tax forms, and collecting and paying to the government, the payroll taxes of his clients. Grafton collected tax money from clients that he was supposed to pay over to the IRS, but instead, Grafton stole a portion of the money collected or the entire amount collected.

Starting in 2005 and continuing through March 2008, Grafton accurately calculated the employees and employers' portions of payroll taxes for his clients and then informed his clients of their respective tax liabilities. These taxes were collected by Grafton to hold in trust on behalf of his clients prior to the taxes being paid over to the Internal Revenue Service (IRS) to satisfy the taxes due and owing. However, instead of paying all of these taxes to the IRS, as was his contractual and fiduciary duty, Grafton fraudulently diverted the funds for various business and personal purposes, unrelated to the interest of his clients. Essentially, Grafton would give each of his clients a payroll summary sheet which detailed the taxes due and owing to the IRS for the client's payroll cycle, and would initiate an ACH (Automatic Clearing House) transfer from each client's bank account to a bank account which Grafton controlled. Instead of paying the amount over to the IRS that Grafton told the client was due and owing and the amount which Grafton took out of the client's account, Grafton would pay over a lesser amount to the IRS.

In committing the scheme, Grafton prepared tax forms, specifically, Form 941 "Employer's Quarterly Federal Tax Return" which he would send to the IRS which contained false and fraudulent information in that the amount due and owing to the IRS as stated on the form was not the correct amount due and owing, but instead matched the portion of the money that Grafton did submit to the IRS, minus the amount that he skimmed for personal and business use, unrelated to the client. Grafton intentionally under reported the wages and related payroll taxes to account for the diverted taxes in an attempt to conceal the theft from the IRS.

Grafton prepared eight Forms 941 on behalf of one client, and falsely under reported the total taxes on Line 6 on each form, so the total tax due and owing would match the amount that Grafton did pay instead of the higher amount that was actually due. In particular and in the same manner as described above, for a client identified herein as Client #1, the defendant, on or about July 31, 2007, assisted in the preparation of a materially

false Form 941 return that claimed $43,925.03 in total taxes
whereas the true total taxes was $131,358.23, the difference of
which was inappropriately diverted instead of being paid to the
IRS. This form was filed with, and received, by the IRS on July
31, 2007.

Additionally, Grafton prepared four Forms 941 on behalf of
two other clients on which Grafton falsely reported tax deposits
on Line 11 that he never made or substantially underpaid, and
instead fraudulently diverted the clients' money. For the three
clients mentioned above, the approximate tax loss is
$376,000.00. Grafton defrauded numerous other clients using
the same scheme as discussed above causing additional tax
losses to the IRS and the federal government, created a
combined tax  loss of over one million dollars. An analysis of
Grafton's personal bank account information showed that he
embezzled over $300,000.00 and had transferred the money
from his business trust account which he was supposed to
manage on behalf of his clients, to his personal bank account
and used the funds for various personal expenditures.

Absent extraordinary circumstances, the above facts bind Grafton.  "[T]he

representations of the defendant . . . [at the plea proceeding] as well as any findings

made by the judge accepting the plea, constitute a formidable barrier in any

subsequent collateral proceedings.  Solemn declarations in open court carry a strong

presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

## GUILTY PLEA

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea[2] waives a

non-jurisdictional defect:

[A] guilty plea represents a break in the chain of events which
has preceded it in the criminal process. When a criminal
defendant has solemnly admitted in open court that he is in fact

---

[2]  A conviction based on a plea of nolo contendere is reviewed the same as a conviction based on a
guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982).

- 3 -

> guilty of the offense with which he is charged, he may not
> thereafter raise independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of the guilty
> plea.

This waiver of rights precludes most challenges to the conviction. "[W]hen the

judgment of conviction upon a guilty plea has become final and the offender seeks to

reopen the proceeding, the inquiry is ordinarily confined to whether the underlying

plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569

(1989). *See also United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003)

("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional

defects in the proceedings."), and *Wilson v. United States*, 962 F.2d 996, 997

(11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-

jurisdictional challenges to the constitutionality of the conviction, and only an attack

on the voluntary and knowing nature of the plea can be sustained."). A guilty plea

waives a claim based on a pre-plea event, including a claim of ineffective assistance

of counsel. *Wilson*, 962 F.2d at 997. Consequently, the entry of a guilty plea waives

a claim (other than a challenge to the court's jurisdiction or a challenge to the

voluntariness of the plea), including both a substantive claim and a purported failing

of counsel that occurred before entry of the plea.

A plea waives both known and unknown challenges to the proceedings. *Brady*

*v. United States*, 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw

his plea merely because he discovers long after the plea has been accepted that his

calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.  More particularly, absent misrepresentation or other impermissible conduct by state agents . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

## INEFFECTIVE ASSISTANCE OF COUNSEL

Grafton claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains,  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Grafton must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691–92.  To meet this burden, Grafton must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Grafton cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. Unite States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Although the *Strickland* standard controls a claim that counsel was ineffective for recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), the quantum of evidence needed to prove both deficient performance and prejudice is different. "[C]ounsel owes a lesser duty

to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).  To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

## GROUND FOR RELIEF

The motion to vacate asserts a single ground for relief, specifically, that counsel rendered ineffective assistance by not correcting errors in both the plea agreement and the pre-sentence report.  The only alleged error that Grafton identifies is that he should pay only $300,000 in restitution and not nearly one million dollars.  Under the plea agreement Grafton admits that by defrauding both the government and his clients he "created a combined tax loss of over one million dollars."

In addition to agreeing to the facts by signing the plea agreement, Grafton offered no disagreement with the accuracy of the facts when afforded an opportunity at the re-arraignment.  (Doc. 48 at 28)  Under the terms of the plea agreement Grafton acknowledges that he must "make full restitution to [the] Internal Revenue Service, Care Plus, Inc., Jensen & Jensen, Inc., ArchiTech Software and other victims to be identified before sentencing."  (Doc. 20 at 3)  During the re-arraignment

- 8 -

Grafton acknowledged understanding that the restitution was mandatory.
(Doc. 48 at 19–20)  At sentencing Grafton's counsel agreed that the amount of restitution totaled $972,890.96, which represents $759,669.06 owed to the Internal Revenue Service and $128,187.96 owed to the victims of his crimes.  (Doc. 50 at 31)  These facts bind Grafton.  *Blackledge*, 431 U.S. at 73–74.

In his motion to vacate Grafton challenges only the restitution portion of his sentence and not the conviction itself.  Under the terms of the plea agreement Grafton waived challenging his sentence, and the waiver precludes a claim that counsel was ineffective at sentencing, as *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.), *cert. denied* 546 U.S. 902 (2005), explains:

> [A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. [A] contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless.

*See also United States v. Wilson*, 445 Fed. App'x 203, 208-09 (11th Cir. 2011) (enforcing the appeal waiver in a plea agreement and applying *Wilson* to dismiss the appeal of a claim of ineffective assistance of counsel at sentencing).

Although he now complains that counsel's performance was deficient, when Grafton pleaded guilty he expressly stated that he has no "complaints about anything [counsel] has done up to this point." (Doc. 48 at 23)  The magistrate judge determined that "Grafton's been represented by competent counsel with whom he

indicates he's satisfied." (Doc. 48 at 30)  Grafton also stated that he understood that the district judge determines the sentence, which could be greater than Grafton expects, and that "if this happens it is not a basis to back out of your plea." (Doc. 48 at 17)  When afforded the opportunity to withdraw from the plea agreement at the conclusion of the re-arraignment, Grafton stated "I would like to keep the guilty plea, sir." (Doc. 48 at 29–30)  Even if counsel's performance was deficient, Grafton cannot prove prejudice because he does not contend that he would not have pleaded guilty.  *Hill v. Lockhart*, 474 U.S. at 59 ("[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

The record clearly shows that Grafton pleaded guilty to obtain the generous benefits provided in the plea agreement.  Grafton received a two-level downward adjustment in calculating the appropriate sentencing range and his term of imprisonment is based on only one count in the indictment — the other eleven counts were dismissed.  At sentencing Grafton expressed remorse, accepted responsibility, apologized to his former clients, and promised "to repay as much of the debt as I possibly can over the coming years [and] to eventually repay it all [because] it's the right thing to do." (Doc. 50 at 9–10)  Reducing the potential term of imprisonment was of greatest importance, as evidenced by counsel's sentencing memorandum, request for a downward variance, support from his pastor, and both Grafton's statement and his wife's statement at sentencing.  The district judge

- 10 -

observed that "persons such as Mr. Grafton frequently view the prospect of

imprisonment with abhorrence . . . ." (Doc. 50 at 34)  Nonetheless, the district judge

determined that imprisonment was necessary:

> On the other hand, this offense is protracted. It was planned,
> executed and disguised over a period of months. It was, I think
> fair to say, cold-blooded and calculated, and it bears signs of
> having been motivated by a number of things, including the sort
> of ostentatious greed that causes a person of his means, which
> are actually moderate, to have a flashy, expensive automobile
> and the like, probably not motivations that [the pastor from
> Grafton's church] would approve if he heard them spelled out.

Lastly, Grafton cites both *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri

v. Frye*, 132 S. Ct. 1399 (2012), for the proposition that he was entitled to the

effective assistance of counsel during the plea negotiation process and, specifically,

"[t]he challenge is not to the advice pertaining to the plea that was accepted but

rather to the course of legal representation that preceded it with respect to other

potential pleas and plea offers." *Frye*, 132 S. Ct. at 1406.  First, neither *Cooper* nor

*Frye* apply retroactively because neither case announced a new rule.  *In re Perez*,

682 F.3d 930 (2012).  Second, as the United States correctly argues, neither case is

applicable to Grafton because trial counsel did not fail to inform Grafton about a plea

offer, no other plea offer existed that was more beneficial, and no basis exists to

believe that a lower amount of restitution was possible.

Accordingly, the motion under Section 2255 to vacate the sentence (Doc. 1) is

**DENIED**.  The clerk must enter a judgment against Grafton and close this case.

**DENIAL OF BOTH**
**CERTIFICATE OF APPEALABILITY**
**AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Grafton is not entitled to a certificate of appealability ("COA").  A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Grafton must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Grafton is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Grafton must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on February 4, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE